# Exhibit A

**ELECTRONICALLY FILED**

**12/14/2017 2:28 PM**

SAN LUIS OBISPO SUPERIOR COURT
BY:
BD Lansberry, Deputy Clerk

1  FINKELSTEIN & KRINSK LLP
   Jeffrey R. Krinsk, Esq. (SBN 109234)
2  jrk@classactionlaw.com
   David J. Harris, Jr., Esq. (SBN 286204)
3  djh@classactionlaw.com
   Trenton R. Kashima, Esq. (SBN 291405)
4  trk@classactionlaw.com
   Lauren R. Presser, Esq. (SBN 292497)
5  lrp@classactionlaw.com
   550 West C St., Suite 1760
6  San Diego, California 92101
   Telephone: (619) 238-1333
7  Facsimile: (619) 238-5425

8  Attorneys for Plaintiffs
   and the Putative Class
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                    COUNTY OF SAN LUIS OBISPO

12

13  STEVEN SCHNEIDER, individually and on       Case No: 17CV-0665
    behalf of all others similarly situated,
14                                              CLASS ACTION COMPLAINT FOR:
                      Plaintiff,
15                                              1.  Violations of California Consumer
    V.                                              Legal Remedies Act (Cal. Civ. Code
16                                                  § 1750, et seq.);
    FORD MOTOR COMPANY, A DELAWARE
17  CORPORATION, AND DOES 1-50, INCLUSIVE      2.  Violations of Unfair Competition Law
                                                   ((Cal. Bus. & Prof. Code § 17200, et
18                    Defendants.                   seq.)

19                                              3.  Breach of Implied Warranty pursuant
                                                   to Song-Beverly Consumer Warranty
20                                                  Act (Cal. Civ. Code §§ 1792 and
                                                   1791.1, et seq.)
21
                                                4.  Breach of Warranty under the
22                                                  Magnuson-Moss Warranty Act (15
                                                   U.S.C. § 2301)
23
                                                5.  Breach of Express Warranty under
24                                                  Cal. Com. Code  § 2313

25                                              6.  Breach of Implied Warranty under
                                                   California Commercial Code §2-314
26
                                                7.  Unjust Enrichment
27
                                                    **JURY TRIAL DEMANDED**
28

                          CLASS ACTION COMPLAINT

EXHIBIT A

Plaintiff Steven Schneider ("Plaintiff") individually and on behalf of all others similarly situated, based on the investigation of counsel and his own individual knowledge as to Plaintiff's own circumstances, hereby complained against defendant Ford Motor Company ("Defendant" or "Ford") as follows:

## I.   INTRODUCTION

1.      This is an action involving Defendant's manufacture and sale of Defective Ford F-150 trucks (collectively "Class Vehicles" or "F-150") which contain transmissions and/or parts that do not operate as intended, creating a safety hazard ("Defect").   Defendant's F-150 trucks, when operated as intended, fail to consistently engage when drivers put them in reverse.   Defendant refers to the trucks' intermittent failures to reverse as a "normal characteristic."

2.      Despite knowledge that Defendant's trucks contain this failure, creating a safety risk, Defendants fail to inform consumers of this failure, and instead, tout the safety and soundness of their vehicles. This lawsuit seeks damages and injunctive relief on behalf of Plaintiff and members of the putative Class for purchasing a product which is not merchantable or fit for its ordinary purposes.  Plaintiff also seeks appropriate restitution and injunctive relief to remedy Defendant's misrepresentation of the character of its trucks by failing to advise consumers of this important information about the vehicles they are purchasing.

## II.   JURISDICTION AND VENUE

3.      This Court has jurisdiction over this civil action pursuant to, without limitation, the California Constitution, Article VI, Section 10, and the California Code of Civil Procedure §§ 382 and 410.10.   Jurisdiction is also proper under the California Business and Professions Code §§ 17200 *et seq.*, the California Business and Professions Code §§ 17500 *et seq.*, and the California Civil Code §§ 1750 *et seq.*

4.      Personal jurisdiction over Defendant is proper because: (1) Defendant has purposely availed itself of the privilege of conducting business activities in California; (2) Defendant currently maintains systematic and continuous business contacts with this State; (3) Defendant has hundreds

- 1 -

CLASS ACTION COMPLAINT

1    of thousands of customers who are residents of this State; and (4) Defendant maintains offices and

2    retail locations in this State.

3       5.    Ford has purposefully availed itself of the privilege of conducting business activities

4    in California, including, but not limited to, designing, marketing, distributing, and/or selling Class

5    Vehicles to Plaintiff and the prospective class members.

6       6.    Venue is proper in this Court pursuant to Code of Civil Procedure  § 395 because

7    many of the acts and transactions giving rise to the violations of law complained of herein occurred

8    in this County, and because Defendant:

9       (a)    entered into the lease agreement here;

10       (b)    conducts business itself or through agent(s) in this County, by advertising, marketing,

11    distributing and/or manufacturing its products in this County;

12       (c)    is licensed or registered in this County; and/or

13       (d)    otherwise has sufficient contacts within this County to justify Defendant being fairly

14    brought into Court in this County.

15       7.    Additionally, venue is proper as the Plaintiff resides Arroyo Grande, California, and

16    the acts, omissions, and contractual performances alleged herein took place in Arroyo Grande,

17    California.

18       8.    Having Defendant litigate Plaintiff's claims in California does not offend traditional

19    notions of fair play and substantial justice and is permitted by the United States Constitution. All

20    Plaintiff's and Class Members' claims arise in part from conduct Defendant purposefully directed to

21    and occurred in California. On information and belief, Defendant's vehicles are sold at dozens of

22    local dealerships throughout the State of California. On information and belief, Defendant avails

23    itself of numerous advertising and promotional materials regarding its malfunctioning vehicles via

24    campaigns specifically intended to reach consumers in California, including but not limited to

25    advertisements on local California television programs, advertisements on local California radio

26    broadcasts, advertisements on billboards in California and advertisements in print publication(s)

27    delivered to consumers in the State of California.

28

- 2 -

CLASS ACTION COMPLAINT

III.   **PARTIES**

9.     Defendant, Ford Motor Company, is a Delaware corporation registered with the California Department of Corporations to conduct business in California.  Ford Motor Company's Corporate Headquarters is located at 1 American Road, Dearborn, Michigan 48126.  Ford Motor Company designs and manufacturers motor vehicles, parts, and other products for sale in the United States and throughout the world. Ford Motor Company is the warrantor and distributor of the Class Vehicles in California.

10.    At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in California.

11.    At all times relevant hereto, Defendant Ford Motor Company knew, expected, or should have been aware that its acts would have adverse consequences within the State of California.

12.    Plaintiff Steven Schneider is a California citizen who resides in Arroyo Grande, California.

IV.    **SUBSTANTIVE ALLEGATIONS**

13.    Defendant has developed, designed, formulated, manufactured, constructed, assembled, advertised, marketed, and sold vehicles since 1903. Defendant has become one of the world's largest and most motor profitable companies, in addition to being one of the largest family-controlled companies in the world. Ford's F-150 truck is its centerpiece. Defendant repeatedly markets the Class Vehicles by emphasizing their reliability and durability, repeating the phrase "Built Ford Tough" in each ad for a number of years.

A.     **Plaintiff's Experience**

14.    Plaintiff leased a new 2016 Ford F-150 from Mullahey Ford, Inc. in Arroyo Grande, California, on February 11, 2016. Prior to purchasing the Class Vehicle, Plaintiff investigated and researched the F-150 and compared it to competing vehicles.  Passenger safety, vehicle performance, and reliability were all factors in Plaintiff's decision to purchase his vehicle.

- 3 -

CLASS ACTION COMPLAINT

EXHIBIT A

15.     However, by the following year, Mr. Schneider's truck began to have problems. After shifting into reverse from a dead stop and *slightly* pressing the gas, Mr. Schneider's truck rapidly roared up over 3,000 RPMs, yet his truck refused to move. Mr. Schneider, worried that this would cause permanent damage to his truck or that another car may run into him, rushed to shut down his vehicle by turning off the ignition.  He was only able to get the car to go in reverse after he turned his engine off and restarted it.

16.     On February 27, 2017, Mr. Schneider brought his truck into the Ford dealership to get the defect repaired.  However, the dealership noted that Ford was aware of this defect and had indicated it was "normal." The Service Bulletin issued by Ford instructed the technician: "normal characteristic, do not attempt repair," mentioning that this Service Bulletin affected at minimum Ford F-150 trucks from 2015-2017.  Ford's authorized dealership did not attempt to make repairs on the vehicle.

17.     This was not the only occasion the truck exhibited this dangerous malfunction.  By March 2017, Mr. Schneider had documented six separate occasions wherein the truck refused to engage in reverse.  By that time, two of those occasions had happened while Mr. Schneider was performing a three point turn on a public road, leaving him exposed to oncoming traffic.  This defect had also caused a "close call" with a two axel truck while making a three point turn.

18.     Mr. Schneider contacted both Ford and the dealership to explain the problem in detail, and requested either a repair, a replacement, or a refund.  Mr. Schneider specifically noted that this defect was "unacceptable and unsafe," and that this could result in "extreme damage to property and/or persons." Ford refused to perform repairs, as this was "normal."

19.     As of this filing, the truck has now refused to engage in reverse an additional five times, each time swiftly revving when the gas is even slightly pressed and refusing to engage until the truck is forcefully turned off. Within the space of less than a year since the first incident, the truck has now exhibited this dangerous characteristic a total of eleven times, presenting an unreasonable danger to both the F-150 occupants and to other drivers. Upon each instance, Ford

- 4 -
CLASS ACTION COMPLAINT

EXHIBIT A

insists this is "normal operation" and therefore it cannot be fixed. Mr. Schneider continues to experience the Defect.

**B. The Defect Poses an Unreasonable Safety Hazard**

20. The Defect causes unsafe conditions in the Class Vehicles, including but not limited to vehicles suddenly lurching, the engine refusing to engage, sudden loss of propulsion, and stranding the driver in the vehicle in the road while operating the vehicle as intended. Even more troubling, the Defect causes the vehicle to be inoperable at best while the engine continues to rev, which can only be halted by turning the car off. As a result, Plaintiff and the Class Members have experienced their trucks 'stalling' out in the middle of roadways while the engine continues revving, blocking the road and having near-misses with other vehicles.

21. Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with their trucks. The Defect poses an unreasonable safety risk for Class Members and other drivers and pedestrians. A vehicle's responsiveness to driver input, such as acceleration and the ability to engage in reverse, and the ability of a vehicle's engine to perform properly are critical to a vehicle's safe operation. A defect that causes one or more of these negative characteristics poses a safety hazard to the general public and increases the risk of automobile accidents.

**C. Ford Had Exclusive Knowledge of this Defect for Years, and Declined to Repair It, Deeming the Defect A "Normal Characteristic" of F-150s**

22. Ford had superior and exclusive knowledge of the defect, and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and the Class Members before they purchased or leased the Class Vehicles.

23. Plaintiff is informed and believes and based thereon allege that before Plaintiff leased his Class Vehicle, and since at least 2015, Ford knew about the Defect through sources not available to consumers, including but not limited to: pre-release testing date; early consumer complaints about the Defect to Defendant's dealers who are their agents for vehicle repairs; warranty claim data related to the defect; aggregate data from Ford's dealers; consumer complaints; dealership repair

EXHIBIT A

1    orders; testing conducted in response to owner or lessee complaints; technical service bulletins

2    ("TSBs") applicable to the Class Vehicles; and other internal sources of aggregate information about

3    the problem.

4         24.     The alleged Defect was inherent in each Class Vehicle and was present at the time of

5    sale. The existence of the Defect is a material fact that a reasonable consumer would consider when

6    deciding whether to purchase or lease the truck in comparison with its competitors.  Had Plaintiff

7    and the other Class Members known that the Class Vehicles contained this Defect, they would not

8    have purchased or leased the Class Vehicles or would have paid less for them.

9         25.     Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's engine and

10   transmission is safe, will function in a manner that will not pose a safety hazard, and is free from

11   defects.  Plaintiff and the Class Members further reasonably expect that Ford will not sell or lease

12   vehicles with known safety defects, such as this, and will disclose any such defects to its consumer

13   when it learns of them.  They did not expect Ford to fail to disclose the Defect, or term the Defect

14   "normal operation."

15        **D.     Ford Has Actively Concealed the Defect**

16        26.     While Ford has been fully aware of the Defect in the Class Vehicles, it actively

17   concealed the existence and nature of the Defect from Plaintiff and Class Members at the time of

18   purchase, lease, or repair and thereafter.  Specifically, Ford failed to disclose or actively concealed at

19   and after the time of purchase, lease, or repair:

20            a.  Any and all known material defects or material nonconformity of the Class Vehicles,

21                including the defects relating to the truck's inability to engage in reverse sporadically;

22
                 b.  That the Class Vehicles were not in good working order, were defective, and were not
23
                     fit for their intended purposes; and
24

25            c.  That the Class Vehicles were defective, despite the fact that Ford learned of such

26                defects through failure rates, consumer complaints, and through internal sources as

27                early as 2014.

28

- 6 -

CLASS ACTION COMPLAINT

27.     Ford issued a Special Service Message ("SSM") in 2015 internally acknowledging that the problem exists.  Specifically, the message stated that "no repair should be attempted," and stated this was a "normal characteristic, do not attempt repair," and recommended the consumer "cycle the ignition on and off" to 'resolve' the problem.

28.     When consumers present the Class Vehicles to an authorized Ford dealer for repair of their vehicle, rather than repair the problem under warranty, Ford dealers inform consumers that their vehicles are functioning properly.

29.     To this day, Ford has not notified Plaintiff or the Class Members at the point of purchase that the Class Vehicles suffer from a systemic defect that causes the vehicle to malfunction.

30.     On information and belief, Ford has caused Plaintiff and the Class Members to expend money at its dealerships to diagnose, repair, or replace Class Vehicles, despite Ford's knowledge of the defect.

V.     **CLASS ALLEGATIONS**

31.     Plaintiffs bring this action as a class action pursuant to California Code of Civil Procedure  § 378 and California Civil Code §1781(a), on behalf of the following Class of persons:

> All persons in California who, within five (5) years of the filing of this Complaint, purchased or leased Ford F-150 vehicles with transmission

Excluded from the Class are all legal entities, Defendant herein and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

32.     Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

33.     There is a well-defined community of interest in the litigation and is readily ascertainable.

34.     While the exact number of prospective Class members is unknown and will be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of their claims in a class action, rather than in individual actions, will

- 7 -

**CLASS ACTION COMPLAINT**

1  benefit both the parties and the courts.  The prospective class members are readily identifiable from

2  information and records in Defendant's possession, custody, or control, as well as from records kept

3  by the Department of Motor Vehicles.

4          35.     Plaintiff's claims are typical of the claims of the other members of the prospective

5  Class. The prospective class members and representative Plaintiff purchased and leased a Class

6  Vehicle designed, manufactured, and distributed by Ford and equipped with the Defect.   The

7  representative Plaintiff, like all prospective class members, have been damaged by Defendant's

8  misconduct in that they have incurred or will incur the cost of repairing or replacing the defective

9  vehicle.  Furthermore, the factual bases of Ford's misconduct are common to all prospective class

10  members and represent a common thread resulting in injury to all prospective class members.

11          36.     There are numerous questions of law and fact common to Plaintiff and the

12  prospective class members that predominate over any question affecting only individual prospective

13  class members.  These common legal and factual issues include:

14          a.   Whether the Class Vehicles contain the Defect;

15          b.   Whether the Defects constitute an unreasonable safety risk;

16          c.   Whether Defendant knew about the Defects, and, if so, how long Defendant has

17               known of the Defect;

18          d.   Whether the defective nature of the Class Vehicles constitutes a material fact;

19          e.   Whether Defendant has a duty to disclose the Defect to Plaintiff and the prospective

20               class members;

21          f.   Whether Plaintiff and the prospective class members are entitled to equitable relieve,

22               including, but not limited to an injunction;

23          g.   Whether Defendant knew or reasonably should have known of the Defect

24               transmission before it sold and leased the Class Vehicles to the prospective class

25               members;

26

27

28

- 8 -

CLASS ACTION COMPLAINT

EXHIBIT A

h. Whether Defendant should be declared financially responsible for notifying all class members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the Defect;

i. Whether Defendant is obligated to inform prospective class members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective trucks; and

j. Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act.

37. Plaintiff will fairly and adequately protect the Class members' interests and have retained counsel competent and experienced in consumer class action lawsuits and complex litigation. Plaintiff and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff is aware of their duties and responsibilities to the Class.

38. Plaintiff and the prospective class members have all suffered will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to individually as the cost of litigating their claims would be exorbitantly high, making it extremely difficult to redress the wrongs done to them. Because of the relatively small size of each individual prospective class member's claims, it is likely only a few prospective members could afford to seek redress for Defendant's misconduct. Without a class action, Defendant's misconduct will likely continue without remedy and prospective class members will continue to incur damages. A class action of common questions of law and fact will conserve the limited resources for the court, the litigants, and would be the most efficient manner of litigation.

- 9 -
CLASS ACTION COMPLAINT

39.     Defendant has acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST COUNT

**Violation Of The CALIFORNIA CONSUMER LEGAL REMEDIES ACT("CLRA")(CAL.CIV. CODE § § 1750, *Et Seq.*)**

40.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

41.     Plaintiffs bring this cause of action on behalf of himself and on behalf of the Class.

42.     Defendant is a "person" as defined by California Civil Code § 1761(c).

43.     Plaintiff and the Class Members are "consumers" within the meaning of the California Civil Code § 1761(c).

44.     By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiff and the prospective class members, Defendant violated California Civil Code § 1761(a), as it represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles and their transmissions and/or engines were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5) &(7).

45.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

46.     Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use. This Defect was found in each of the Class Vehicles at purchase, but may have not been discovered by putative class members until months, or years, after the purchase.

47.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and /or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiff and the class

- 10 -

CLASS ACTION COMPLAINT

EXHIBIT A

members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

48.     Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles and/or associated repair costs because Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicle and Plaintiff and the class members could not reasonably have been expected to learn or discover that their trucks had a dangerous safety defect until it manifested.

49.     In failing to disclose the defective nature of the Class Vehicles, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

50.     A reasonable consumer would have considered the facts Defendant concealed or did not disclose to Plaintiff and the Class Members to be important in deciding whether to purchase or lease the Class Vehicles or pay less for them, and were material. Had Plaintiff and the class members known of the defective nature of the Class Vehicles, they would not have purchased or leased the vehicles or would have paid less for them.

51.     Plaintiff and the Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to suddenly refuse to engage in reverse.   This is the reasonable and objective consumer expectation relating to vehicle transmissions.

52.     As a result of Defendant's conduct, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience a failure for the truck to engage while in reverse.

53.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and the Class Members suffered and will continue to suffer actual damages. Had Defendant disclosed the true nature and/or danger in its vehicles, Plaintiff and members of the Class would not have been misled into purchasing Defendant's vehicles, or would have paid significantly less for them.

54.     Plaintiff, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seeks injunctive relief

CLASS ACTION COMPLAINT

EXHIBIT A

1  prohibiting Defendants from continuing these unlawful practices pursuant to California Civil Code §

2  1782(a)(2), and such other equitable relief, including restitution of either (1) the full purchase or

3  lease price paid by customers who purchased a Class Vehicle, or (2) a portion of the purchase or

4  lease price paid by customers who purchased or leased a Class Vehicle reflecting the difference in

5  value as compared to a vehicle without the defect.

6          55.     Plaintiff provided Defendant with notice of its violations of the CLRA pursuant to

7  California Civil Code § 1782(a) *via* certified mail, attached hereto as Exhibit A, demanding that

8  Defendant correct such violations..  Defendant failed to provide appropriate relief for its violations

9  of the CLRA within thirty days.

10                          **SECOND COUNT**

11          **(Violation of California Business & Professions Code § 17200, *et seq.*)**

12          56.     Plaintiff  hereby incorporate by reference the allegations contained in the preceding

13  paragraphs of this Complaint.

14          57.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

15          58.     As a result of their reliance on Defendant's omissions and/or misrepresentations,

16  owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or

17  lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their

18  Class Vehicles.   Additionally, as a result of the Defect, Plaintiff and the Class Members were

19  harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before

20  their expected useful life has run.

21          59.     California Business & Professions Code §  17200 prohibits acts of "unfair

22  competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair,

23  deceptive, untrue or misleading advertising."

24          60.     Plaintiff and the Class Members are reasonable consumers who do not expect their

25  trucks to refuse to engage in reverse without warning.

26          61.     Defendant knew the Class Vehicles suffered from inherent defects, were defectively

27  designed or manufactured, would fail prematurely, and were not suitable for their intended use.

28

                                - 12 -
                          **CLASS ACTION COMPLAINT**

62.   In failing to disclose the Defect, Defendant has knowingly or intentionally concealed material facts and breached its duty not to do so.

63.   Defendant was under a duty to Plaintiff and the Class Members to disclose the defective nature of the trucks and/or associated repair costs because Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles and Plaintiff and the class members could not reasonably have been expected to learn or discover that their trucks had a dangerous safety defect until it manifested.

64.   A reasonable consumer would have considered the facts Defendant concealed or did not disclose to Plaintiff and the Class Members to be important in deciding whether to purchase or lease the Class Vehicles or pay less for them, and were material. Had Plaintiff and the class members known of the defective nature of the Class Vehicles, they would not have purchased or leased the vehicles or would have paid less for them.

65.   Defendant continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.

66.   Defendant's conduct was and is likely to deceive consumers

67.   Defendant's acts, conduct, and practices were unlawful, in that they constituted:

   a.  Violations of the California Consumer Legal Remedies Act;

   b.  Violations of the Song-Beverly Consumer Warranty Act; and

   c.  Violations of the express warranty provisions of California Commercial Code section 2313.

68.   By its conduct, Defendant has engaged in unfair competition and unlawful,  unfair, and fraudulent business practices.

69.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

70.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the Class have suffered and will continue to suffer actual damages.

- 13 -

CLASS ACTION COMPLAINT

71.     Defendant has been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## THIRD COUNT

**(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)**

72.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

73.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

74.     Defendant was at all times relevant the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

75.     Defendant provided Plaintiff and the Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they are sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

76.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (1) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation; and (2) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

77.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the Class Members with reliable, durable, and safe transportation.   Instead, the Class Vehicles are defective.

CLASS ACTION COMPLAINT

EXHIBIT A

78.    Defendant's breach of express and implied warranties has deprived Plaintiff and the Class Members of the benefit of their bargain.

79.    Defendant has had multiple reasonable opportunities to cure its breach, including when Plaintiff and the Class Members brought their vehicles in for diagnoses and repair.

80.    As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiff and the Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and the Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other such relief the Court deems appropriate.

81.    Ford also breached the express warranty by performing illusory repairs.  Rather than repairing the vehicles pursuant to the express warranty, Ford falsely informed class members that there was no problem with their vehicles, that the defect was 'normal operation' of the vehicle and failed to actually repair the vehicle.

82.    As a result of Defendant's violations of the Song-Beverly Warranty Act as alleged herein, Plaintiff and the Class Members have incurred damages.

### FOURTH COUNT

**(Breach of Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2303 *et seq.*)**

83.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

84.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

85.    Plaintiff and the Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

86.    Defendant is a "supplier" and a "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

- 15 -
CLASS ACTION COMPLAINT

EXHIBIT A

87. Defendant's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

88. Ford provided all purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles. In this Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship" if the vehicle is properly operated and maintained and was taken to a Ford dealership for a warranty repair during the warranty period. Under this "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the] vehicle" "for three years – unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles."

89. Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components including the "Transmission: all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, transmission mounts" "for five years or 60,000 miles, whichever occurs first."

90. On information and belief, Defendant breached the express warranty by:

    a. Extending a 3 year/36,000 mile Bumper to Bumper Limited Warranty and 5 year/60,000 mile Powertrain Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship, at no cost to the owner or lease;

    b. Selling and leasing Class Vehicles with parts that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

- 16 -

**CLASS ACTION COMPLAINT**

   c. Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead refusing to repair the vehicles.

91.    Furthermore, Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (1) a warranty that the Class Vehicles and their parts were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation, and (2) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

92.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the Class Members with reliable, durable, and safe transportation.   Instead, the Class Vehicles are defective.

93.    Defendant's breach of express and implied warranties has deprived Plaintiff and the Class Members of the benefit of their bargain.

94.    Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiff and Class Members brought their vehicles in for diagnoses and repair.

95.    As a direct and proximate cause of Defendant's breach of express and implied warranties, Plaintiff and the Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiff and the Class Members who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

96.    Additionally, Defendant breached the express warranty by refusing to perform repairs.  Rather than repairing the vehicles pursuant to the express warranty, Defendant falsely informed class members that there was no problem with their vehicles or describing the defect as "normal operation."

97.    As a result of Defendant's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiff and the Class Members have incurred damages.

- 17 -

CLASS ACTION COMPLAINT

EXHIBIT A

**FIFTH COUNT**

**(Breach of Express Warranty under Cal. Comm. Code § 2313)**

98.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

99.     As a result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.   Additionally, as a result of the Defect, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles' are substantially certain to fail before their expected useful life has run.

100.     Defendant provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain. Therefore, Defendant's express warranty is an express warranty under California law.

101.     Defendant manufactured and/or installed the transmission and its component parts in the Class Vehicles.  The transmission and its component parts are covered by the express warranty.

102.     Ford provided all purchasers and lessees of the Class Vehicles with a New Vehicle "Bumper to Bumper" Limited Warranty and a Powertrain Limited Warranty with the purchase or lease of the Class Vehicles.  In this Bumper to Bumper Limited Warranty, Ford expressly warranted that its dealers would "without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period if the vehicle is properly operated and maintained and was taken to a Ford dealership for a warranty repair during the warranty period.  Under this "Bumper to Bumper Coverage," Ford promised to cover "all parts on [the] vehicle" "for three years – unless you drive more than 36,000 miles before three years elapse. In that case, your coverage ends at 36,000 miles."

103.     Furthermore, under the Powertrain Limited Warranty, Ford expressly warranted that it would cover listed powertrain components under its Powertrain Limited Warranty, including transmission components including the "Transmission: all internal parts, clutch cover, seals and

- 18 -

**CLASS ACTION COMPLAINT**

gaskets, torque converter, transfer case (including all internal parts), transmission case, transmission mounts" "for five years or 60,000 miles, whichever occurs first."

104.    On information and belief, Defendant breached the express warranty by:

      a.   Extending a 3 year/36,000 mile Bumper to Bumper Limited Warranty and 5 year/60,000 mile Powertrain Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship, at no cost to the owner or lease;

      b.   Selling and leasing Class Vehicles with parts that were defective, requiring repair or replacement within the warranty period; and

      c.   Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead refusing to repair the vehicles.

105.    Plaintiff was not required to notify Defendant of the breach because affording Ford a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendant was also on notice of the defect from the complaints and service requests it received from Class Members, from requests to repair and replace the vehicle, and through other internal sources.

106.    As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease.  Additionally, Plaintiff and the other Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

107.    Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

## SIXTH COUNT

### (Breach of Implied Warranty under California Commercial Code §2-314)

108.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

- 19 -

CLASS ACTION COMPLAINT

EXHIBIT A

109.   The Class Vehicles are "goods" as defined in California Commercial Code §2-105.

110.   Defendants are "merchants" as defined in California Commercial Code §2-104.

111.   Pursuant to California Commercial Code §2-314, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

112.   In order for goods to be "merchantable," they must be "fit for the ordinary purposes for which such goods are used." Cal. Comm. Code §2-314.

113.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (1) a warranty that the Class Vehicles and their parts were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for providing transportation, and (2) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

114.   Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, creating a substantial safety risk to drivers and other motorists, and making the vehicles unmerchantable.

115.   As a direct and proximate cause of Defendant's breach, Plaintiff and the other Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease.  Additionally, Plaintiff and the other Class Members either have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

116.   Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendant, including actual damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

///

///

///

- 20 -

CLASS ACTION COMPLAINT

EXHIBIT A

## SEVENTH COUNT

### (Unjust Enrichment)

117.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

118.   Plaintiff and members of the Class are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

119.   Defendant's vehicles are "consumer goods" within the meaning of Section 1791(a) of the California Civil Code.

120.   Defendant is a "manufacturers" of Ford F-150s pursuant to Section 1791(j) of the California Civil Code.

121.   Defendant, by selling an unreasonably dangerous product without warning, breached their implied warranty of merchantability, as they distributed vehicles to Plaintiff and the Class that would not pass in the relevant trade or industry.

122.   Defendant knew or should have known that the Class Vehicles were inherently dangerous, and that Plaintiff and members of the Class had a substantial chance of suffering harm in conjunction with using the Class Vehicle for their ordinary purpose of providing Plaintiff and the Class Members with reliable, durable, and safe transportation.  Defendant also knew or should have known that Plaintiff and the Class would rely on Defendant's skill and judgement in providing them with a vehicle which was suitable for its ordinary purpose.

123.   Plaintiff and the Class did in fact purchase the Class Vehicles and did in fact reasonably rely on Defendant's skill and judgement to furnish a suitable vehicle.

124.   By manufacturing and distributing the Class Vehicles without warning of the Defect, Defendant breached its implied warranty of fitness for its intended purpose. As set forth herein, the Class Vehicles are not fit for the ordinary purposes for which such goods are used – i.e. providing reliable, durable, and safe transportation.  Instead, these vehicles suddenly fail to engage in reverse, creating a substantial risk and safety hazard to users.  Such outcome cannot be argued as falling under the ordinary purpose of a vehicle.

- 21 -

CLASS ACTION COMPLAINT

EXHIBIT A

125. As a result of this breach of warranty, Plaintiff and the Class suffered damages, including the purchase price of the Class Vehicles, as they would either not have purchased these vehicles, or would have paid less for them.

126. Plaintiff and the class seek damages for this harm as well as injunctive relief to remedy this harm .

127. As a result of Defendant's breaches of their implied warranties, Plaintiff and the Class sustained damages when they purchased the Class Vehicles, which were not fit for the ordinary purposes for which vehicles are used.

128. Accordingly, Plaintiff, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public of the state of California, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including restitution of either (1) the full purchase paid by customers who purchased or leased Class Vehicles, or (2) a portion of the purchase price paid by customers who purchased or leased the Class Vehicles reflecting the difference in value as compared to a products produced without an adverse and sudden reaction, to the fullest extent permitted by law.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

A. For an order declaring that this action is properly maintained as a class action and appointing Plaintiffs as representatives for the Class, and appointing Plaintiffs' counsel as Class counsel;

B. That Defendant bear the costs of any notice sent to the Class;

C. For an order awarding Plaintiffs and the members of the Class actual damages, restitution and/or disgorgement;

D. For an order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

E. For an order awarding Plaintiffs and the members of the Class pre- and post-judgment interest;

- 22 -

CLASS ACTION COMPLAINT

1    F.    For an order awarding attorneys' fees and costs of suit, including expert's witnesses

2  fees as permitted by law; and

3    G.    Such other and further relief as this Court may deem just and proper.

4  **VII.   JURY TRIAL DEMAND**

5    Plaintiff demand a trial by jury for all of the claims asserted in this Complaint so triable.

6

7  DATED: December 14, 2017                          Respectfully submitted,

8                                                    FINKELSTEIN & KRINSK LLP

9                                          By: _____

10                                                  Lauren R. Presser

11                                          Jeffrey R. Krinsk, Esq.
                                            David J. Harris, Esq.
12                                          Lauren R. Presser, Esq.
                                            550 West C St., Suite 1760
13                                          San Diego, CA 92101
                                            Telephone:  (619) 238-1333
14                                          Facsimile:   (619) 238-5425

15                                          Attorneys for Plaintiffs
                                            and the Putative Classes

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -
CLASS ACTION COMPLAINT

EXHIBIT A

<u>**DECLARATION OF STEVEN SCHNEIDER**</u>

I, Steven Schneider, declare as follows:

1.      I am the Plaintiff in above-captioned action. I have personal knowledge of the facts stated herein, and if called to do so, could and would competently testify thereto.

2.      I leased Defendant's Ford F-150, as described in the complaint attached hereto, in Arroyo Grande, California.  Accordingly, the transaction that give rise to this complaint occurred in San Luis Obispo County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 14, 2017 in Arroyo Grande, California.

Steven Schneider

- 24 -
CLASS ACTION COMPLAINT

EXHIBIT A

# EXHIBIT A

EXHIBIT A

# FINKELSTEIN & KRINSK LLP

ATTORNEYS AT LAW

550 WEST C STREET
SUITE 1760
SAN DIEGO, CALIFORNIA 92101

TELEPHONE (619) 238-1333

FACSIMILE (619) 238-5425

October 25, 2017

*Via Certified Mail*
*Return Receipt Requested*

Ford Motor Company
Attn: Office of Legal Counsel
One American Road
Dearborn, MI 48126

Re:     CLRA Letter Demand from Steven Schneider to Ford Motor Company, Inc.

Dear Gentlemen/Ladies:

We represent Mr. Steven Schneider (hereinafter "Steven" or "Mr. Schneider") and similarly situated California citizen consumers in a prospective lawsuit against Ford Motor Company, Inc. ("Ford" or "Defendant"). We believe Ford has made material misrepresentations and/or omitted material information and/or failed to suitably inform customer owners of Ford automobiles of defects in Ford F-150 transmissions. The failure to engage Mr. Schneider experienced evidences a defect of design, engineering, and/or installation of the transmissions used for certain Ford F-150 models. This occurs without fault of the driver as the abrupt failure of the transmission to engage while in reverse startles the driver and dangerously can leave the driver stranded when operating the vehicle as designed. Ford represents its transmissions as being safe, which they are not. This letter is a mandatory notice allowing the recipient to undertake corrective action, as specified herein, and thereby avoid the filing of Mr. Schneider's class action complaint.

Mr. Schneider purchased a brand new Ford F-150 in 2016. On multiple occasions, while the truck is fully stopped, Mr. Schneider has put the truck in reverse only for the truck to fail to engage. He promptly brought the automobile to the Ford dealership that had sold him the automobile. The dealership was unable to resolve the issue, and sent a message to Ford, detailing the issue. Ford responded stating that this was a "normal characteristic" and instructed the dealership "no repair should be attempted," and was unable to provide relief. To date, Mr. Schneider continues to experience this problem, posing a grave safety concern.

Ford has sold (and continues to sell) thousands of vehicles throughout California to California citizen consumers without alerting those customers or otherwise addressing the dangerous condition caused by the defective transmission, thereby violating the CLRA.

Ford's business practices are specifically prohibited by, at least, the following (disjunctive) subsections of the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"):

EXHIBIT A

Ford Motor Company, Inc.
Page 2

(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services.

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; and

(7) Representing that goods or services are of a particular standard [or] quality... if they are of another.

CAL. CIV. CODE § 1770(a).

Pursuant to CAL. CIV. CODE §§ 1780 *et. seq.*, we demand, on behalf of Mr. Schneider and all similarly situated consumer customers that purchased Ford F-150s having the same or similar transmission specifications, that Ford immediately provide an adequate corrective remedy and suitable relief addressing the indicated violations of CAL. CIV. CODE § 1770. More specifically, relative to the above, Mr. Schneider, on his own behalf and on behalf of Ford customers similarly situated, as above referenced, demands that Ford take the following corrective actions (and all of them) in satisfaction of the requirements of CLRA § 1782(c):

1. Notify or make reasonable attempts to notify current and former California citizen customers of Ford F-150s equipped with transmissions that they are unsafe and prone to failure;

2. Notify or make reasonable attempts to notify current and former California citizen customers of Ford F-150 vehicles equipped with defective transmissions that upon request, Ford will provide corrective installations eliminating the propensity of the Ford F-150 transmission failure as heretofore described;

3. Notify or make reasonable attempts to notify current and former California citizen customers of Ford vehicles equipped with transmissions that, upon request, Ford will provide compensation for the decreased value resulting from installation of the malfunctioning transmission;

4. Correct misrepresentations and omissions in Ford advertising and marketing as they pertain to Ford F-150s;

5. Hire an independent consumer ombudsman to review, monitor, and approve responses to customer complaints concerning Ford vehicles sold in California if the complaint pertains to the fit, finish, mechanical and/or electrical operation of Ford automobiles; and

6. Implement measures for quality control established to reasonably address the flaws of Ford F-150 vehicles sold in California in order to have them perform as warranted.

EXHIBIT A

Ford Motor Company, Inc.
Page 3

We further require that corrective notices be placed in suitable media to alert customers of Ford F-150s transmission failures and provide information concerning the fact hereof and entitlement to the remedial benefits as hereby required.

Upon expiration of thirty (30) days from the date of your receipt of this letter, Mr. Schneider will file a class action complaint on behalf of Ford customers seeking damages as provided by CALIFORNIA CIVIL CODE § 1780, after determining that Ford has not agreed to a full and adequate remedy responsive to the practices alleged by this letter and/or not agreed to alternative remedies. Ford must undertake all of the described corrective measures to satisfy CAL. CIV. CODE § 1780, or such remedies as agreed to in writing by counsel.

This letter is a required notice to Ford under the CLRA, informing Ford of its violations of the CLRA and our client's demand for himself and others similarly situated. Ford may respond, if at all, to the content of this letter within thirty (30) days of its submission.

Mr. Schneider emphasizes his willingness to consider suitable alternatives to the above demand and/or an opportunity to review data, records, or other documentation establishing the lack of a basis for Mr. Schneider to proceed with filing his complaint. In that regard, our reviewing such records and data as Ford has in its possession concerning the extent and cause(s) of the failing Ford transmissions.

We anticipate and would welcome a reply.

Sincerely,

FINKELSTEIN & KRINSK LLP

Lauren R. Presser, Esq.

LRP:rag

EXHIBIT A

CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com;

OFFICIAL USE

| Postage | $ | .46 |
| Certified Fee | | 3.35 |
| Return Receipt Fee (Endorsement Required) | | 2.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.56 |

Postmark Here

Sent To: Ford Motor Co., Ofc of Legal Csl
Street, Apt. No; or PO Box No. One American Road
City, State, ZIP+4 Dearborn, MI 48126

PS Form 3800, August 2006 See Reverse for Instructions

---

HORTON PLAZA
51 HORTON PLZ
SAN DIEGO
CA
92101-9996
0567300100
(800)275-8777 4:02 PM
10/27/2017

| Product Description | Sale Qty | Final Price |

Prepaid Mail 1
(Weight:0 lbs. 0.90 oz.)
(Destination:DEARBORN, MI 48126)
(Acceptance Date:10/27/2017 16:02
:45)
(Label #:70080150000139739159)

Total $0.00

BRIGHTEN SOMEONE'S MAILBOX. Greeting cards available for purchase at select Post Offices.

Order stamps at usps.com/shop or call 1-800-Stamp24. Go to usps.com/clicknship to print shipping labels with postage. For other information call 1-800-ASK-USPS.

Get your mail when and where you want it with a service Post Office Box. Sign up for a box online at

---

SENDER: COMPLETE THIS SECTION

Complete items 1, 2, and 3.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Ford Motor Company
Attn: Office of Legal Counsel
One American Road
Dearborn, MI 48126

9590 9402 1409 5329 1998 88

2. Article Number (Transfer from service label)
7008 0150 0000 3973 9159

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____ ☐ Agent ☐ Addressee
B. Received by (Printed Name) C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

NOV 14 2017
DEARBORN

3. Service Type
☐ Adult Signature ☐ Priority Mail Express®
☐ Adult Signature Restricted Delivery ☐ Registered Mail™
☐ Certified Mail® ☐ Registered Mail Restricted Delivery
☐ Certified Mail Restricted Delivery ☐ Return Receipt for Merchandise
☐ Collect on Delivery ☐ Signature Confirmation™
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

Domestic Return Receipt

EXHIBIT A